## McCOMB et al. v. BASKERVILLE.

A third person bought a threshing engine from defendant. On it proving unsatisfactory, it was agreed that defendant would deliver a new one in its place. While the third person was running the engine to defendant's place of business, he requested defendant to furnish men to assist him; it being agreed that the third person would pay for them. Defendant sent two of his servants, and while one of them was assisting the third person's engineer in running the engine on the highway the engine emitted sparks and set a fire which destroyed plaintiff's property: Held, that defendant was not liable for damages sustained; the persons operating the engine being the third person's employees.

Where both parties moved for the direction of a verdict, both parties admitted that the evidence was undisputed, so that the only question was one of law; and it was error to direct a verdict for plaintiffs on there being no sufficient evidence to support it.

(Opinion filed, January 10, 1906.)

Appeal from Circuit Court, Codington County. Hon. Geo. H. Marquis, Judge.

Action by S. M. McComb and another against M. R. Baskerville. From a judgment for plaintiffs, defendant appeals. Reversed.

Lee Stover, for appellant. A. Sherin, for respondents.

CORSON, J. This is an action to recover damages for the loss of a certain crop destroyed by fire set by a threshing engine while passing along the highway. Verdict and judgment being in favor of the plaintiff, the defendant appealed.

Several errors have been assigned; but in the view we take of the case it will only be necessary to consider the third assignment of error, which is that the court erred in denying the motion made by defendant at the close of all the evidence to direct a verdict in his favor upon the ground that there was no evidence proving or tending to prove that this defendant was liable for the damages sustained by the plaintiffs. It appears from the evidence that in the

summer of 1902 one Clark purchased of the defendant a threshing engine, which not proving entirely satisfactory in September of that year a contract was entered into in which it was agreed between the defendant and Clark that a new engine of a different make should be furnished him and the engine sold to him in the summer taken back, and that the exchange of the engine should be made at Watertown. This contract was introduced in evidence in the case. It appears from the undisputed evidence that on the day previous to the fire the engineer employed by Clark started with the old engine to Watertown, and that when it arrived at Kranzburg, about 6 miles east of Watertown, the engineer in charge had trouble in running it, and that Clark thereupon telephoned to the defendant, Baskerville, to send out two men to take the engine in to Watertown and he would pay them, and also requested Baskerville to send out the new engine; that in compliance with said request Baskerville took two men from his machine shop and directed them to take out the new engine to a point at or near Kranzburg and bring in the old one; that the men employed by the defendant, in compliance with Clark's request, took the new engine out to Kranzburg and started back with the old one; that, having some trouble in running the same, it was laid up for the night at a farmhouse about 3½ miles east of Watertown. On the following day, being the day on which the fire occurred, one of the two men sent out by the defendant in response to Clark's telephone message again started with the old engine for Watertown; one of the men, Hanten, having left the engine at the farmhouse, and does not again appear to have taken any part in running the same. This engineer again having trouble with the engine the said Clark placed upon the same his own engineer, a Mr. Shoulock, and while the engine was being run by these two men the fire which destroyed the plaintiff's property was set, and being unable to extinguish the fire they proceeded with the engine to Watertown and delivered it at the machine shop of the defendant Baskerville.

The appellant, as a witness in his own behalf, testified substantially as follows: "I traded threshing engines with Mr. Clark in the fall of 1902. Mr. Clark was to deliver the engine which he traded at Watertown. He got as far as Kranzburg with it, and then tele-

phoned me to hire a couple of men and he would pay them. He wanted me to hire a couple of men to bring the engines in. They were to bring the engine to Watertown. I did as he requested, and Mr. Clark paid the two men for it. I sent out Mr. Hanten with this (new) engine at Mr. Clark's request. I instructed Mr. Hanten to meet the other engine this side of Kransburg and bring the other engine in. I received the engine that Mr. Clark was to deliver to me in exchange for the one I was to deliver to him at Watertown. At the time Mr. Hanten and his helper was running this engine to Kransburg they were working for Mr. Clark." Mr. Clark paid them for their work. He further says that one of the two men that he sent out with the new engine and to bring back the old one was working for him by the month and the other by the day. Mr. Clark, in his testimony as a witness for defendant, testified as follows: "I traded engines with Mr. Baskerville in the fall of 1902. I delivered the engine I traded to him here in Watertown. I was to fetch up the engine I traded and make the exchange here at Watertown. * * * Q. How did that happen that the other egnine came up to meet you? A. I 'phoned to Mr. Baskerville. Q. What, if anything, did Mr. Baskerville do for you? A. He got some men to run the other egnine down to meet my men. Q. Who paid these men? A. I paid them." It further appears from the undisputed evidence that the two men sent out by Baskerville at the request of Clark started back with the old engine; but, having some difficulty in running it, they stopped overnight at a farmhouse. On the following morning, the day of the fire, Clark with his engineer, Shoulock, on their way to Watertown to get some machinery to repair the new engine, overtook the old engine some 3½ miles from Watertown, and the engine not running satisfactorily to Mr. Clark he directed Charles Shoulock, his own engineer, who was with him, to take charge of the same and run it into Watertown. In speaking of this matter, Mr. Clark in his testimony says: "I placed Charles Shoulock in charge of the engine the next morning to bring it in. That is the engine I delivered to Mr. Baskerville in Watertown. * * * I did not like the way it was running. Shoulock had been working for me on the engine. He had never been in Mr. Baskerville's employ that I know of. Shoulock was working for

me at the time for wages. * * * The man that had started back to Watertown with the other engine was the man that Baskerville had sent out. He was running the engine when Mr. Shoulock and I caught up with him. I told Shoulock to get on and help. I did not know the man that was on the engine coming to Watertown. I suppose he was in my employ. I know I had to pay for it anyway. * * * I told him (Shoulock) to get on and see that the engine came in all right. I told him to get on and take charge, so as to be sure that the engine would get in all right. Q. So far as you were concerned, you left Charley in charge of the engine? A. Yes; I telephoned Mr. Baskerville. I told him that if he could hire some men that I wished he would do so, because I was in a hurry to get to threshing. * * * Under these instructions Mr. Baskerville did as I instructed. Q. Did you tell Mr. Baskerville what men he should hire? A. No sir. Q. Are you sure that you told him to hire somebody? (. Yes; and I told him that I was in a hurry. Q. (by the Court). What was he to hire men for? A. To run that engine down that I traded for to meet my men on the road and save time, so that I could get to threshing." It further appears from the undisputed evidence that the fire was set after Shoulock, Clark's engineer, took charge of the engine and that he and the other man not being able to extinguish the fire ran the engine on to Watertown and delivered it at Baskerville's machine shop.

It will thus be seen that Hanten and the helper sent with him to take out the new engine to Kranzburg were employed by Baskerville as the agent of and at the request of Clark, and were paid by Clark, and that the same man started back with the old engine; that about 3½ miles east of Watertown this engine was left overnight, and that on the following morning the helper, one of the employees sent out by Baskerville at the request of Clark, again started the engine to Watertown, and that while on the way he was overtaken by Clark and Shoulock, Clark's engineer; that by direction of Clark Shoulock took the engine in connection with the helper and ran it from that point into Watertown; that while these two latter men were running the engine the fire complained of was set. It will be further observed that the two men sent out by Baskerville were sent out by him at the request and as the agent of Clark and

that Clark paid them, and that Shoulock was Clark's engineer, regularly in his employ. It will be further observed that by the terms of the contract and the understanding of the parties, as shown by the evidence of both Baskerville and Clark, the exchange of engines was to be made at Watertown, and that there was no evidence proving or tending to prove that the contract so made was changed or modified. It clearly appears, therefore, that Baskerville in legal effect delivered the new engine at Watertown to Clark by placing the same in charge of the two men employed by him, as the agent of Clark, and that the old engine was delivered to him at his machine shop in Watertown by Clark's engineer, Shoulock, and one of the men employed by Baskerville as the agent of Clark to bring it in. It is clear from the undisputed evidence, therefore, that neither Baskerville nor any servant or employee of his was in charge of the old engine at the time the fire was set, and that at the time the old engine had not been delivered to him. In short, the new engine was run out to Kranzburg by the persons employed by Baskerville at the request of Clark, and the old engine was run into Watertown by one of the men so sent out at Clark's request and Clark's engineer, Shoulock. In a legal point of view it is not material whether Baskervile in complying with the request of Clark took the men that were to take out the new engine and bring back the old one from his machine shop or from the machine shop of any other party. When the men were employed by Baskerville as the agent of Clark, they became Clark's servants and employees and continued to be such until the old engine was delivered to Baskerville's machine shop in Watertown. Upon this state of facts it is difficult to discover any theory upon which Baskerville could be held liable for the loss sustained by the plaintiffs. The learned circuit court seems to have overlooked the fact that the men sent out by Baskerville with the new engine with instructions to bring the old one back were employed at the request of Clark and paid by Clark, and that they continued to be the servants of Clark until the old engine was delivered at Watertown, and that in contemplation of law the exchange of the engines took place at Watertown, and not at Kranzburg; the so-called exchange at Kranzburg being simply a transfer of the servants of Clark from one engine to another.

Previous to the making of the motion by defendant for the direction of a verdict the plaintiffs moved the court to instruct the jury to return a verdict in their favor. These motions made by the defendant and plaintiff were in effect admissions that the evidence was undisputed, and that the only question to be decided by the court was a question of law. In Yankton Fire Ins. Co. v. Fremont, E. & M. V. R. Co., 7 S. D. 428, 64 N. W. 514, this court after a full review of the authorities held that "both parties, by their respective motions, in effect admitted there were no disputed facts to be submitted to the jury, and virtually agreed to submit the questions of both law and fact to the judge; and under such circumstances, if there is evidence sufficient to uphold the decision, it is not error for the court to direct a verdict." We are clearly of the opinion that upon the undisputed evidence Baskerville was not liable for the damages caused to plaintiffs by the fire, and that the court should have granted defendant's motion and directed a verdict in its favor.

The judgment of the circuit court and order denying a new trial are reversed.