*Maddox, McCamy & Shumate* and *C. D. McCutchen*, contra.

---

## BROADHURST, guardian, *et al. v.* HILL *et al.*

1. Under former rulings of this court, the judgment of the trial court will not be reversed for refusing to direct a verdict on motion of one of the parties.

2. The judge of the superior court should not direct a verdict, except where there is no conflict in the evidence, and where that introduced, with all reasonable deductions or inferences therefrom, demands a particular verdict.

   (a) In the case at bar, although there was positive evidence that one who appeared as a purchaser in an administratrix's deed, together with two others, was not in fact such, but merely loaned money to the others for the purpose of paying a part of the purchase-price, and that his name was inserted in the deed as a mode of securing him for the loan, and that the deed did not express the real legal intention of the parties, yet the entire evidence in the record was not such that it, with all reasonable deductions or inferences therefrom, demanded a verdict in favor of the plaintiffs, or authorized the presiding judge to direct a verdict in their favor.

3. If a husband purchases land at a sale made by his wife as administratrix, such purchase is voidable at the election of heirs of the intestate, who move within a reasonable time after the sale to set it aside.

4. The doctrine, that, although a sale may be voidable as against an original purchaser, bona fide purchasers from him for value and without notice may acquire a title which can not be successfully attacked or set aside, is not so applicable to the present case as to demand a verdict in favor of the plaintiffs. This case did not originate in a proceeding instituted by heirs against subsequent purchasers from those who bought at the administratrix's sale, to recover from them or cancel their title. As to the plaintiffs, it is an equitable proceeding instituted by persons who claim to be the original purchasers at the administratrix's sale, for the purpose of correcting an alleged mistake in a deed made by the administratrix. The verdict directed was in favor of the plaintiffs on their proceeding and also against the cross-petition.

53

5. Under the evidence in the record, a direction of a verdict in favor of persons claiming to be purchasers at the aministratrix's sale, and seeking to have the deed made to them and another so reformed as to eliminate such other person as a purchaser, can not be sustained by this court on the ground that, as matter of law, the defendant who contested the case as guardian for the minor heirs, and such heirs, were estopped from asserting the invalidity of the sale by reason of the receipt of a part of the purchase-money by the guardian.

6. On another trial the newly discovered evidence can be offered, and it is unnecessary to deal with its weight or force at this time.

7. The fact that a defendant may make a motion that a verdict be directed in his favor, which is overruled, does not, without more, waive the submission of the case to the jury, or authorize the presiding judge, on motion, to direct a verdict for the plaintiff, where the evidence, with all reasonable deductions and inferences therefrom, does not demand such a verdict.

8. As a reversal is granted, it is unnecessary to deal with the question of taxing costs by the presiding judge.

MARCH 23, 1912.

Equitable petition. Before Judge Littlejohn. Sumter superior court. July 15, 1911.

Mrs. Bela Hill Moreland, as administratrix of the estate of Mrs. Pauline A. Hill, deceased, obtained an order for the sale of real estate of the intestate, advertised it, and exposed it for sale on the first Tuesday in January, 1910. She made an administratrix's deed to E. B. Hill, W. D. Moreland, and D. B. Hill. It recited: "E. B. Hill having paid one half of the purchase-price, his interest would be that of an undivided one-half interest in the property hereinafter described; and W. D. Moreland having paid one fourth of the purchase-price, his interest will be a one-fourth undivided interest in the property hereinafter described; and D. B. Hill having paid one fourth of the purchase-price, he will be one-fourth interested therein. The said E. B. Hill, W. D. Moreland, and D. B. Hill are designated as parties of the second part, owning respective interests in said property as set out above, and will be understood throughout the entire deed." After reciting the order of sale and the advertisement, the deed further stated that the administratrix "did expose to sale, within the legal hours of sale, on the first Tuesday in January, 1910, the real estate hereinafter described, when the parties of the second part became the purchasers thereof, being the highest and best bidders at said sale." This deed was duly recorded on January 12th. E. B. Hill and D. B. Hill were

the brothers of the administratrix, and W. D. Moreland was her husband.

On October 26 thereafter, E. B. Hill and D. B. Hill filed their equitable petition against Mrs. Moreland individually and as administratrix, W. D. Moreland, and the other heirs of the intestate, two of them being her children, and four her minor grandchildren, and against the guardian of the latter. They alleged, in substance, as follows: There are no creditors of the estate, and no unpaid debts. At the sale by the administratrix, plaintiffs were the highest bidders, and the property was knocked off to them at the aggregate price of $29,905. The sale was public, open, and fair, and the property brought its full value at that time. It brought more than the plaintiffs anticipated that it would, and they were without means to pay the full cash purchase-price. They made arrangements with, and secured from, W. D. Moreland, as a loan, one fourth of the amount of the purchase-price, to enable them to pay for the property. In order to secure him for the advance, they requested the administratrix, instead of making the deed to them cover the entire interest in the property, to convey to Moreland an undivided one-fourth interest, which was done, and the deed made as above stated. The conveyance to Moreland of the undivided one-fourth interest was not intended to convey to him the absolute title thereto, but was only to secure him the advance made by him to them, to enable them to pay the purchase-price. Moreland was to have no interest in the land or title thereto except as security for the money loaned to them, and he does not claim and never has claimed any title to the land except as security. "Petitioners show that said deed conveying to said Moreland the undivided one-fourth interest in said property was a mistake of said administratrix, of your petitioners, and of said Moreland, and was contrary to the intention of said parties, was an unintentional error arising from ignorance on the part of the parties, with no intention to convey to said Moreland an absolute fee-simple title to said undivided one-fourth interest." The plaintiffs prayed that the mistake in conveying to Moreland the undivided one-fourth interest in the property be corrected and the deed reformed, and that the title to said property be decreed to be absolute and in fee simple in them, "to each an undivided one-half interest therein," and that they have general relief.

Moreland answered the equitable petition, admitting the allegations thereof, and alleging that he had been repaid the loan of $7,476.25, and in pursuance of the agreement had conveyed the one-fourth interest in the land to the plaintiffs. A copy of the deed was attached to the answer, which showed that it contained recitals in accordance with such answer, and that it was made on October 31, five days after the commencement of the suit.

The answer of Mrs. Moreland individually and as administratrix was in accord with the allegations of the plaintiffs. She alleged: that she was informed that the plaintiffs had made arrangements with Moreland for the loan of some money with which to pay a part of the purchase-price; that as administratrix she made the deed as it appears, at the request of the plaintiffs; that she never understood that he had purchased any interest in the property, but always understood that it was purchased by the plaintiffs; that the funds arising from the sale had been distributed among the heirs, and $4,829.98 had been paid to Broadhurst as guardian for the minor grandchildren, and a receipt taken therefor; that all the other funds in the hands of the administratrix had been distributed among the heirs, leaving only certain real estate in Houston county to be administered; and that a second receipt had been taken from Broadhurst as guardian, for the amount so paid.

Broadhurst, as guardian for the minor grandchildren of the intestate, filed an answer in substance as follows: He denied that Moreland was not a bidder at the sale. He alleged that he understood at the time of the sale that Moreland announced, when the property was knocked off by the crier, that E. B. Hill was the purchaser. This defendant was not apprised of the fact that Moreland, the husband of the administratrix, was named as one of the purchasers until recently. The property was sold as a whole, and not in undivided interests. The division between the plaintiffs and Moreland was agreed upon and determined either before or after the sale, and the deed was made in pursuance of this understanding and agreement between the parties. On account of the fact that Moreland was the husband of the administratrix, he could not become a purchaser of the land at the sale by her, and on this account the sale was void as against the interests of his minor wards. So far as appeared at the time of the sale, the property

brought its full value, but he is advised and believes that, owing to the inopportune time for the sale of the property, as shown by subsequent events, it did not bring its real and true value; and that in a very short time after the sale, the land was sold by the purchasers to Andrews and Logan for $32,000, and was subsequently sold by them for $40,000. He has tendered to the administratrix the full amount received by him from the sale as guardian for the minor children. By way of cross-petition he prayed, that, instead of the deed being reformed as desired by the plaintiffs, it should be declared to be null and void, and that the administratrix should be required to resell the land. A guardian ad litem, who had been appointed for the minors, adopted this answer as his own.

On the trial, after the close of the evidence, the presiding judge refused to direct a verdict in favor of the guardian and guardian ad litem, and directed a verdict in favor of the plaintiffs. The guardian and guardian ad litem moved for a new trial, which was refused, and they excepted.

*R. L. Maynard*, for plaintiffs in error.

*E. A. Hawkins, Ellis, Webb & Ellis,* and *W. P. Wallis,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

1. It has been held that this court will not reverse a refusal by a trial judge to direct a verdict in favor of one of the parties to a litigation. *Green* v. *Scurry,* 134 *Ga.* 482 (2), (68 S. E. 77). Hence the ground of the motion for a new trial which complained of the refusal to direct a verdict for the defendants was without merit.

2. The presiding judge directed a verdict in favor of the plaintiffs. Civil Code (1910), § 5926, declares: "Where there is no conflict in the evidence, and that introduced with all reasonable deductions or inferences therefrom demands a particular verdict, the court may direct the jury to find for the party entitled thereto." It is only in the case thus declared that a judge may properly direct a verdict. We do not deem it desirable to enter into a full discussion of the evidence, or to intimate how the jury should have found, if the case had been submitted to them. We will only discuss it far enough to show that the presiding judge erred in directing the verdict, and that there was sufficient evidence to carry the case to the jury, under proper instructions.

The deed made by the administratrix, which shows on its face that it was carefully prepared, so as to recite a compliance with the requirements of the law in regard to the sale, and the interest which each of the grantees therein should take, declared that the two Hills and Moreland were the parties of the second part; that at the sale "the parties of the second part became the purchasers thereof, being the highest and best bidders at said sale;" 'that E. B. Hill having paid one half of the purchase-price, his interest will be an undivided one-half interest in the property; that Moreland "having paid one fourth of the purchase-price, his interest will be a one-fourth undivided interest in the property hereinafter described;" and that D. B. Hill, having paid one fourth of the purchase-price, will be interested to the extent of one fourth. The deed, containing these explicit recitals, was delivered and recorded. There was evidence that the two Hills did not give to Moreland any note or evidence of indebtedness, or make any written contract with him as to it. There was no evidence of even a parol agreement as to when the money was to be returned, or when the debt would become due, or whether it bore interest. Thus the usual indicia of an indebtedness for so large a sum of money seem to have been entirely wanting. And this is true, although Moreland testified that he borrowed part of the money which he let the Hills have. Some time after the making of the deed by the administratrix, the plantation included in the deed was sold to J. R. Logan and Reese M. Andrews. A bond for title was made to them, and notes given by them. The bond was signed by E. B. Hill, D. B. Hill, and W. D. Moreland, apparently as tenants in common, and the notes were made to them. Andrews testified, that, at the time of the making of the notes and the bond for title (in May, 1910), nothing was said as to the interest of Moreland being simply as security for a loan, and that he first learned of the claim that such was the fact about the first of the following November. Logan testified that he bought the land with the understanding that Moreland had an interest in it; that the bond for title and notes were drawn to that effect; that nothing was said about Moreland's interest being a security for debt; and that he first learned of the claim that such was the fact after they failed to make a title, about the first of November. There was evidence tending to show that

the two Hills borrowed money from a bank to pay Moreland the amount which they claimed to be due him, and that they paid him, and took from him a deed dated after the present petition had been filed.

Without pursuing the evidence further, there can not be a doubt, from what is stated above, and the reasonable deductions which might have been drawn therefrom, that the jury might have believed that Moreland and the two Hills were purchasers at the sale by the administratrix. It is true that much evidence was introduced tending to establish the contentions of the plaintiffs, and that witnesses swore positively to the fact that Moreland was not a.purchaser, but merely loaned money to the Hills, and the deed from the administratrix included his name as a means of securing him for the loan, instead of having a deed made to the Hills and then from the Hills to him. But juries are authorized to pass upon questions of fact. And it can not be successfully contended that the evidence in this case, and the reasonable deductions therefrom, so plainly demanded a verdict for the plaintiffs that the presiding judge was authorized to direct a verdict in their favor.

3. An administratrix can not sell property of the estate to her husband. The relationship of husband and wife is too intimate, and she is too much interested in his welfare and in the success of his undertakings to permit her to sell to him property of an estate which is in her hands to be administered for the best interest of the beneficiaries. An administrator can not be allowed to sell the property of the estate to himself, nor an administratrix to herself. A trustee can not be allowed to be on both sides of a sale. At common law there was a merger of the wife's legal existence into that of the husband, and the two became one. Relatively to her separate property this is not so under our statutes. But the law still recognizes a unity of interest, and still indulges in the presumption that the husband has influence over the wife. Under our code, she is not permitted to sell her own property to him without an order of court. Nor should she be allowed to sell to him the property of others entrusted to her management as administratrix. If a husband purchases property at a sale made by his wife as administratrix, the sale to him is voidable at the election of heirs of the intestate, who move within a reasonable time to have it set aside.

*Lowery* v. *Idleson,* 117 *Ga.* 778 (45 S. E. 51). If this was in fact a sale by the wife as administratrix to the husband as the purchaser, the rule stated would apply, unless there was laches, or some other sufficient reason, which would authorize a denial of the setting aside of the sale. What were the real facts we have already declared was a question for the jury.

4. It was argued that the sale to Logan and Andrews terminated the right to set aside the administratrix's sale, if such a right ever existed; and in support of this position authorities were cited in which an attempt was made by heirs to set aside a sale and recover property from innocent purchasers who had bought without notice of any defect in the title. But in the present case the proceeding was not instituted by the heirs against Logan and Andrews; nor are the latter here asserting that the title in them is good as it stands. Indeed they are not parties to the litigation at all. On the contrary, there is some intimation that they are not satisfied to take the title as it now exists; and the present equitable proceeding was brought by the Hills against Moreland, the administratrix, and the heirs of the decedent, to correct an alleged mistake in the title. The verdict directed granted their prayer, as well as refused that of the cross-petition. The difference between the cases cited and the present one is obvious.

5. It was contended that the heirs of an estate can not have both the proceeds of the sale of the land and the land itself, and that, by receiving the part of the proceeds of the sale applicable to the distributive share of the minors, the guardian estopped himself and them from seeking to set aside the sale. The general principle that one can not have the proceeds of a sale and at the same time seek to set it aside and recover the property is sound. *Battle* v. *Wright,* 116 *Ga.* 218 (42 S. E. 347). But there was some evidence tending to show a retender to the administratrix of the amount received by the guardian (no point appears to have been made that it was by check), and it was refused, and the minor grandchildren were represented both by him and a guardian ad litem. On the record before us, we can not declare, as matter of law, that the minor grandchildren and their guardian are estopped.

6. By amendment a ground was added to the motion for a new trial, based on newly discovered evidence. After consideration, we think it best not to discuss the weight or force of such evidence, or

the question of diligence in its discovery, as it may be offered upon another trial.

7. · It was argued, that because the plaintiffs in error moved the court to direct a verdict in their favor, and the defendants in error also moved for the direction of a verdict in their favor, this waived the question of whether the case should be submitted to the jury, and that, upon overruling the motion of the plaintiffs in error, the court could grant that of the defendant in error. The motion for a new trial distinctly makes the point that, under the evidence, the motion for the defendants in error should not have been granted but the case should have been submitted to a jury. The mere fact that a party to a litigation contends that the evidence demands a finding in his favor does not amount to a concession that, if this position is not correct, a verdict may be directed in favor of the other party. On the contrary, a contention that the evidence demands a verdict for one party prima facie includes the contention that it does not demand a verdict in favor of the other. Of course parties may agree that the case is controlled by a question of law, and that the judge shall direct a verdict one way or the other, and thus waive the right to have a jury pass upon the facts. In *Lydia Pinkham Co.* v. *Gibbs,* 108 *Ga.* 138 (33 S. E. 945), something of this kind occurred; and moreover, the Supreme Court held that there was no conflicting evidence on the issue involved. In the present case there was no such waiver of a jury trial on the facts.

8. One ground of the motion for a new trial was that the court erred in taxing any part of the costs against the moving defendants, because they were not responsible for, and did not participate in, the making of the mistake from which the plaintiffs sought relief. If the question of taxing cost is a proper ground of a motion for a new trial, this ground becomes immaterial, since, the judgment being reversed, the costs will be retaxed upon another trial. The case being equitable in its nature, the presiding judge has some discretion in the matter.

*Judgment reversed. All the Justices concur.*