## 5654. WOODHAM *v.* CASH.

"In estimating the value of personalty unlawfully detained, the plaintiff may recover the highest amount which he can prove between the time of the conversion and the trial." Civil Code, § 4514. The time of the conversion referred to in this section is the time when the defendant himself converted to his own use the property sued for.

DECIDED FEBRUARY 3, 1915.

Trover; from city court of Tifton—Judge R. Eve. March 14, 1914.

· *Ridgdill & Mitchell, C. C. Hall, Perry, Foy & Monk,* for plaintiff in error.

*H. S. Murray, Fulwood & Skeen,* contra.

WADE, J. L. V. Cash, the owner of an automobile, which he left at a certain garage in Tifton, found, on his return to that place after an absence of several weeks, that the machine had been levied upon by the bailiff of a justice's court, under and by virtue of a pretended writ of attachment, and that, at a void sale had thereunder, it was purchased by one G. S. Nelson (in good faith, so far as the record discloses) for $100. It appears that after Nelson had kept and used the car, replacing burst tires and making various repairs, he sold it to Woodham for $110, having expended altogether $30 or $40 on the machine without making it run successfully. An action of trover for the car was brought against Woodham by Cash. On the trial the evidence showed that Woodham expended $129 in repairing the car, in addition to the

$110 which he paid Nelson therefor, before the car could be made to run; that he bought the car some time in August, 1912, and after expending altogether $416 thereon, finally sold it to one Perry; that Perry failed to pay for the car, and it was put up and sold at auction in Albany, and brought $65. There was evidence that the car was worth, at the time it was sold by the bailiff under the void attachment process, from $800 to $100 or less; and Woodham testified that had he known as much about the car when he purchased it as he did at the time of the trial, he would not have paid $5 therefor. There was evidence from various experts and near-experts as to the condition of the car, its various ailments and constitutional defects, as well as testimony tending to show that the machine not only had a perfect constitution (metaphorically speaking) but was in perfect health at the time the bailiff seized it without proper warrant or authority and attempted to convey title thereto to Nelson. The plaintiff elected to take a money verdict, and the jury found in his favor the sum of $335, without hire. The defendant made a motion for a new trial, in which, besides the general grounds, he complains that the court erred in charging the jury as to the measure of damages to be adopted by them, as follows: "You are to determine, from all the evidence before you, first, the value of the property alleged to have been converted, to wit, the automobile, at and upon the day of the conversion, which the court charges you was the day upon which the car was levied upon." It is contended that this instruction did not "fix the right and legal date of conversion," since the evidence showed that the car was levied upon some time before its purchase by the defendant; and that this charge was not authorized by the evidence, since there was nothing whatever to show that he was in any way connected with or responsible for the levy upon the car, and he was not in fact even the purchaser thereof at the sale which was had under the void levy.

There was evidence from which the verdict rendered, or from which perhaps different verdicts, would be authorized, according to the testimony which the jury might have elected to believe; so it is unnecessary to discuss the general grounds of the motion for a new trial, even if it were here insisted that the verdict was without sufficient evidence to support it. The only point for decision, then, is whether the court gave to the jury the correct rule as to the

measure of damages they should use in arriving at the amount of the verdict. The Civil Code, § 4514, provides, that "in estimating the value of personalty unlawfully detained, the plaintiff may recover the highest amount which he can prove between the time of the conversion and the trial." It does not appear that it has ever been decided in this State definitely and clearly that the expression "the time of the conversion" relates to the time when the property, the value of which the plaintiff is seeking to recover, was converted to his own use by the defendant in the particular cause. It appears to us, however, to be perfectly plain that the meaning of the statute is that the plaintiff may recover the highest amount which he can prove between the time when the property was converted by the defendant in the cause then proceeding and the trial of the cause (the "highest proved value" meaning the highest value which the jury, under the proof, may fix for the property during the period between the conversion and the trial, and not the highest estimate given by any witness as to its value during that period). *Elder* v. *Woodruff Hardware &c. Co.,* 9 *Ga. App.* 484 (71 S. E. 806). If the code section meant that the highest value shown from the time when the property was originally converted by a person from whom the plaintiff ultimately acquired title might be recovered, even where the proof failed to show that the defendant was a party to the original conversion or had such knowledge thereof as to bind him along with the original tort-feasor, manifest injustice would often result.

In the instant case we may assume, for the sake of the argument, that the automobile in question was actually worth, at the time it was converted by the illegal levy of the bailiff, $800, as estimated by the plaintiff, and yet, even had the original purchaser at the constable's sale (Nelson) acted in bad faith in making the purchase, why should Woodham, who bought from him in good faith 30 days later, be held to account in a suit brought against Woodham alone for the full sum of $800, where his predecessor Nelson had decreased the value of the machine during the 30 days he had it in his possession, and in point of fact it was actually worth only $110 at the time Woodham acquired the possession or converted the automobile to his own use? In other words, conceding that the machine had deteriorated between the time it was unlawfully seized by the constable and the time when Woodham in good faith

purchased it from one who he supposed had the legal title, why should he be held liable for such deterioration? The conversion sued for in the action against Woodham was necessarily the conversion for which Woodham was responsible, or in which he had at least participated, and it would be contrary to any rule of reason to hold him responsible for something with which he had absolutely nothing to do, and about which he had no knowledge which might subject him to the consequences flowing from the unlawful seizure of the property by the constable, and antecedent to his own purchase thereof. This view appears to be recognized as correct in *Elder* v. *Woodruff Hardware &c. Co.,* supra, though no discussion of the question is there given. In that case one holding a purchase-money note with retention of title in the vendor, signed by one Maddox, who sold the property to one Elder, who in turn sold it to another, brought suit in trover against Elder; and in the decision Judge Powell said: "In this case the proof as to the value of the property at the time of the *defendant's* [italics ours] conversion and subsequently was in decided conflict, and therefore presented a jury question." Suppose that Nelson acquired possession of this automobile in the manner that he did, and thereafter the automobile had been wrecked by him and its value practically diminished thereby to what it might bring merely as scrap-iron (though still bearing the semblance of an automobile), and that some machinist or the proprietor of an automobile garage had purchased the broken remains from Nelson in perfect good faith and believing that Nelson had the title thereto, and had paid therefor the sum of $10, and suit in trover should thereafter be brought against the purchaser of the wrecked machine, how manifestly unreasonable and unjust would be a rule which directed or empowered the jury to find a verdict against this last purchaser for the full value of the machine at the time Nelson originally obtained possession thereof?

In our opinion the court erred in giving the measure of damages set out in the excerpt complained of.

*Judgment reversed. Broyles, J., not presiding.*