## 5793. ELDER v. WOODRUFF HARDWARE & MANUFACTURING CO.

1. "The highest proved value" recoverable in an action of trover is the amount which the jury, from a consideration of all the evidence, may find to be the highest value of the property during the period between the conversion and the trial, and not the highest estimate given by any witness as to the value during that period.
2. The plaintiff in a trover suit may recover the amount which he proves to be the highest value of the property between the time of its conversion by the defendant and the trial of the cause.
3. The evidence was in conflict as to the value of the property at the time of the alleged conversion, and therefore did not demand a verdict for one amount only.
4. While there was testimony showing an admission by the defendant that the property sued for was converted by him prior to the bringing of the action, there was no evidence definitely showing its value, and therefore nothing upon which to base a money verdict.
5. The direction of a verdict is error requiring a new trial, except where there is no conflict in the evidence, and where the evidence introduced, with all reasonable deductions or inferences therefrom, demands the verdict directed.
6. The fact that the defendant and the plaintiff each move the court to direct a verdict in his favor does not amount to an agreement on the part of either to waive the submission of the case to the jury; nor does it estop the party against whom a verdict is directed from excepting to such direction. The contention on the part of either that the evidence demands a verdict for himself includes the further contention that it does not demand a verdict in favor of the opposite party.

DECIDED MAY 4, 1915.

Trover; from city court of Jefferson—George C. Thomas, judge pro hac vice. May 18, 1914.

*Ray & Ray,* for plaintiff.　*L. C. Russell,* for defendant.

WADE, J. When this case was formerly here for review (9 *Ga. App.* 484, 71 S. E. 806), the judgment of the lower court was reversed because a verdict was directed in favor of the plaintiff for the full amount of the purchase-price of the buggy, as fixed in the original contract between him and Maddox, the original purchaser, although there was evidence that at the time the property was converted by the defendant (who purchased from Maddox), it was worth much less than that sum. This court said that where a seller retains title as security for his purchase-money, or where one otherwise holds title to personal property as security, and brings trover to recover the property, the amount of the indebtedness remaining due at the time of the trial fixes the maximum of his recovery;

but "where the seller who·has retained title as security for his purchase-money brings trover, even against the original purchaser, his act in bringing the suit operates as a rescission of the sale; and if he elects to take a money verdict, he can not recover more than the value of the property at the time of the conversion, with interest or hire, or the highest proved value between the conversion and the trial, accordingly as he may elect, notwithstanding the balance due on his debt may be a larger amount." It was said further in that decision (p. 486) that, "As between the original seller and the original purchaser, the agreed price as stated in the contract of sale is prima facie, but not conclusive, evidence of the actual value of the property. But as between the seller and third persons the amount stated in the contract of purchase is of no such evidentiary value." In *Woodham* v. *Cash,* 15 *Ga. App.* 674 (84 S. E. 142), this court held: "'In estimating the value of personalty unlawfully detained, the plaintiff may recover the highest amount which he can prove between the time of the conversion and the trial.' Civil Code, § 4514. The time of the conversion referred to in this section is the time when the defendant himself converted to his own use the property sued for." In that decision it was further said: "It appears to us, however, to be perfectly plain that the meaning of the statute is that the plaintiff may recover the highest amount which he can prove between the time when the property was converted by the defendant in the cause then proceeding and the trial of that cause (the 'highest proved value' meaning the highest value which the jury, under the proof, may fix for the property during the period between the conversion and the trial, and not the highest estimate given by any witness as to its value during that period)." In the present case it was· held, when the case was here before, that the phrase "highest proved value" should be interpreted to mean the highest amount which the jury, from consideration of all the proof, find that the property was worth at any time during the period between the conversion and the trial (if during the period there was a difference in value), and does not mean "the highest estimate given by any witness as to the value during the period stated." Therefore, since the record discloses that the plaintiff originally sold to one Maddox the property sued for, and retained title thereto in a note which stipulated a purchase-price of $100, and the suit for the recovery of the property

described in the retention-of-title note was brought against one Elder, who it was alleged had converted the property to his own use, and the plaintiff elected to take a money verdict, the amount of that verdict would be what the jury might find from the proof was the amount established as the highest value between the conversion by Elder and the trial, and not the amount as fixed by the original contract or the highest *estimate* given by any witness as to the value of the property between its conversion by the defendant in the cause then proceeding and the trial.

The record of the trial now under review shows that the witness Wood was the only witness who gave any evidence whatever as to the value of any buggy, and he testified as follows on this point: "I suppose that the buggy was worth between $65 and $70. I say the buggy that Mr. Maddox had." And also "I saw it [at Maddox's father's] in November. . . During the time from November up to Christmas that buggy was worth $65 or $70." Confining ourselves, for the present, merely to the question as to proof of value, it appears that according to the "estimate" of this witness, the buggy he testified about was worth "between" $65 and $70, or was worth either $65 "or" $70; so that no definite and fixed estimate as to value was made by this witness; but, according to his testimony, the jury would not have been constrained to find that the buggy was worth the highest amount he estimated it to be worth, to wit, $70, but could have found that it was worth $65 only, or some amount between $65 and $70. Since more than one verdict could have been found in favor of the plaintiff under this testimony, the court erred in directing a verdict for the highest estimate placed on the property by the witness. If the verdict directed had been for the lowest amount shown by this (the sole) witness, the defendant would have had no cause for complaint on this point. If it were otherwise possible to sustain the verdict returned by direction of the court, we could remove all injurious consequences which may have resulted to the defendant from this error, by directing that the judgment be reduced from $70 to $65 principal, and that the proper amount be also written off from the amount of the interest recovered against the defendant; but for other causes, not in our power to remove, the verdict must be set aside.

It was insisted that the evidence failed to show that Elder, the

defendant, ever converted the particular buggy sued for, but we think the testimony of Garner sufficiently established the fact that the defendant converted the buggy sued for and which was originally sold to Maddox. Garner testified, that he was working for the Woodruff Hardware & Manufacturing Company in November, 1909, and that on December 23 he went to the defendant's house to find this particular buggy, and, not finding him at home on that day, went back on the next day and saw him "about the buggy," and he then "said he had traded the buggy off." The witness added: "He said he had traded for the buggy [the identical buggy described in the action of trover] from Mr. Maddox. He claimed that he had traded the buggy off the day I was first over there [December 23] while in Athens." This witness further said, that he did not ask the defendant about the buggy "he got from Woodruff," but "asked him about this buggy described in this note;" that he knew nothing about the condition of the buggy sued for on December 23, 1909, and the buggy might have been "torn up" and worthless so far as he knew. We think this testimony was sufficient to show the conversion by the defendant of the buggy sued for.

As stated above, the only witness who fixed any valuation whatever upon any buggy was the witness Wood, and his testimony did not identify the buggy which he asserted was worth "between $65 and $70," or "$65 or $70," as being the particular buggy sued for, as he simply testified that this was the value of "the buggy that Mr. Maddox had," which he had seen at "Maddox's father's" in November. Wood further testified, that he saw a buggy with a hole in the back of the top at Maddox's and "it was a black painted buggy as well as I remember, but whether there were stripes I don't know, I can not tell the color of the running gear or wheels. . . I saw a buggy in Mr. Elder's possession that had the same kind of hole in the top." The witness further testified, that Maddox said he "let the buggy go between December and Christmas," and some time after that he saw a buggy that "resembled" the Maddox buggy in the possession of Elder; that the Maddox buggy had a hole in the top, and the one in the possession of Elder had the same kind of a hole; that he saw Elder "down here in Jefferson one day," but could not swear it was the same buggy that Elder then had; "all I go by is the hole in the back of it." He could not tell the color of

the running-gear of the buggy, nor the "build" of the buggy, nor the "make."

It is possible that from this evidence a jury might have determined that the buggy which the witness Wood testified he had seen in the possession of Maddox, or at the house of Maddox's father, and which he said was worth $65 or $70, was the identical buggy he afterwards saw Elder in possession of, but even then it would be impossible to say that the buggy referred to by Wood, or the buggy that Wood saw Elder in possession of in the town of Jefferson, was the buggy which Elder admitted to the witness Garner he had obtained from Maddox, or, in other words, was the "one red running-gear rubber-tire buggy" obtained by Elder from Maddox. From the testimony we may conclude that Elder, on December 23, 1909, was in possession of the particular buggy which he obtained from Maddox, and which the plaintiff sold to Maddox, but what the value of that buggy may have been on December 23, when, so far as the testimony discloses, the conversion was made by Elder, the evidence does not disclose. Wood testified that a certain buggy which Maddox once owned, and which in every particular resembled the buggy afterwards seen in the possession of Elder, was worth from $65 to $70, but whether this buggy was the buggy sued for and the buggy which Elder admitted he obtained from Maddox, it is impossible to say with certainty, though we may have a strong suspicion that the two were identical. So it will be seen that there was no proof from any source whatever as to the value of the buggy sued for, and which Elder admitted he disposed of on December 23 in Athens, since the buggy shown to be worth $65 or $70 was not, under the testimony, necessarily that buggy. The court therefore was not authorized to direct a verdict.

It is urged by the defendant in error that because each party in the court below moved the court to direct a verdict, the plaintiff in error is estopped from complaining that the judge directed the verdict against him, since he himself "volunteered to take the case from the jury, so to speak, and requested the court to direct a verdict." While there have been decisions elsewhere which support that view (Sundling v. Willey, 19 S. D. 293, 103 N. W. 38, 9 Ann. Cas. 644; McComb v. Baskerville, 20 S. D. 353, 106 N. W. 300), it appears to be settled in Georgia that where both parties move the direction of a verdict, the party against whom the verdict

is directed is not estopped, because of his motion, from excepting to the direction of the verdict against him. In *Broadhurst* v. *Hill,* 137 *Ga.* 833-841 (74 S. E. 422), it was said: "A contention that the evidence demanded a verdict for one party prima facie includes the contention that it does not demand a verdict in favor of the other." And in the same case it was said: "The fact that a defendant may make a motion that a verdict be directed in his favor, which is overruled, does not, without more, waive the submission of the case to the jury, or authorize the presiding judge, on motion, to direct a verdict for the plaintiff, where the evidence, with all reasonable deductions and inferences therefrom, does not demand such a verdict." It is true, as was said in *Lydia Pinkham Medicine Co.* v. *Gibbs,* 108 *Ga.* 138 (33 S. E. 945), it is not error for the judge to direct a verdict, where it is agreed by counsel for both sides that, under the evidence, the controlling issue in the case is "a question of law for the court to decide, and that he should accordingly direct a verdict," etc. To the same effect is the decision in *Mims* v. *Johnson,* 8 *Ga. App.* 850 (70 S. E. 139), it being agreed by counsel on both sides in that case that it was a proper case for the direction of a verdict, and the exception to the verdict directed being not that the court directed a verdict, but merely that the verdict was erroneous because contrary to law and the evidence. The rule, however, is that the direction of a verdict is error requiring a new trial, except "where there is no conflict in the evidence, and that introduced, with all reasonable deductions or inferences therefrom, demands a particular verdict." Civil Code, § 5926. It can not be said in this case that the evidence as a whole *demanded* a verdict in favor of the plaintiff, or that it demanded a verdict for the amount of the verdict rendered, to wit: $70 principal, and $20.40 interest to judgment. The presiding judge therefore erred in directing the verdict, and in thereafter overruling the motion for a new trial.    *Judgment reversed.*