## 9732.  CARTER v. AMERICAN SLICING MACHINE CO.

1. Demand by the plaintiff for the property involved was not necessary before an action of trover for a machine in the defendant's possession, sold to him by the plaintiff, under a contract by which title to it was

retained in the vendor until full payment of the purchase-price, where the defendant refused to pay the agreed price in full, contending that the property was worthless to him.

2. The value of the property was shown prima facie by the agreed price in the contract of sale. The direction of a verdict for that amount, less payments made, was authorized, under the pleadings and the evidence.

DECIDED FEBRUARY 12, 1919.

Trover; from the city court of Carrollton—Judge Beall. February 26, 1918.

The defendant pleaded failure of consideration, alleging facts to which he testified on the trial. The plaintiff introduced in evidence the contract under which the machine involved in the suit had been delivered to the defendant, and admitted that the defendant had paid $30 on it. The contract price was $135, payable in installments, all of which were to become due on failure to pay any part of the agreed sum when due; and the contract contained provisions as follows: "The American Slicing Machine Company guarantees the machine shipped by virtue of this order to be constructed of good material and free from defective workmanship. . . . No verbal agreement can change or modify the conditions of this contract; . . there is no verbal or written understanding or agreement different from or other than the printed conditions of this contract." It was provided that title to the machine should remain in the vendor until full payment of the purchase-price. The contract was dated September 28, 1915. The defendant testified: "I received the machine described. . . It worked for a while; the first spring worked for about one month, then the company sent me another, which lasted only a few days. I did not use the machine after the second spring gave out. I used it in all about forty days. When the first spring gave out I advised the company and they sent me a new one; the new one gave out. . . It was not strong enough to do the work." The defendant introduced a letter sent by him to the plaintiff, dated February 10, 1916, in which it was stated that he enclosed a check for $10 to be applied on his account, and that he wanted a described spring for the machine, as the one that worked the feed was broken, and he could not use the machine without another spring; also a letter dated February 28, 1916, saying: "I have had to do without the use of it [the machine] half the time it has been here; so you see I have become very much disappointed with it; so make me a proposition on it, and if anywhere in reason I will return it to you;" also a letter dated

March 13, 1916, saying he had made arrangements for another slicer, as he could not do without the use of a machine, and had been trying for nearly two months to get the plaintiff's machine to work and was still doing without the use of it, and "you can instruct me as to what you want to do about this one;" also a letter to the same effect, dated June 10, 1916. He further testified: "I made every reasonable effort to use the machine before I made other arrangements. After notifying the company that I could not use the machine, on account of defects, I made other arrangements. I could not use the machine; it was worthless to me. The company shipped me a new machine, but I did not uncrate it; I did not order it. I turned it over to Mr. Boykin, counsel for plaintiff. I am in the meat business and I need a slicing machine pretty much all the time. I kept the machine on my counter for about three months, I suppose, and during that time it was out of order half the time. I was forced to make other arrangements. I was doing a large market business and was forced to use a machine every day. I am not claiming the machine that the sheriff has,—the first one shipped. I am only claiming the money that I paid them on a defective machine." (On cross-examination.) "I did not send it back to the factory. . . I made no further effort, after the second spring gave way, to use the machine. I made other arrangements. . . As soon as I wrote them that the second spring would not work, they wired me that they were shipping a new machine . . . 'by prepaid freight'. . . At first they did all they could to fit me up in a good machine, but when it proved defective I wrote them and heard nothing from them. They did not advise me what to do with the old machine, but sent a new one. I did not refuse to turn the machine over to them." In response to the question, "You would not turn it over to us until we made a settlement with you for the amount you had paid?" the defendant replied: "You wanted me to pay you for it instead of letting you have it back. Of course, when the sheriff came for it, I did not hesitate to let him have it. The sheriff is the only man that made any demand on me that I have any recollection of." The defendant admitted that on receipt of the machine he signed a statement to the plaintiff that it had been set up and tested and was apparently in good condition. At the close of the defendant's evidence, counsel for the plaintiff moved that a verdict for the contract price

be directed. The court directed a verdict in favor of the plaintiff for $105; to which the defendant excepted, contending that it was error because no demand for the machine was made before suit, and there was no waiver of demand; that it was a question of fact for the jury, whether the consideration had failed; that the verdict was error because of the guaranty in the contract, and the evidence showed that the machine was defective and not of the kind guaranteed; and that the court erred in treating this contract as an express warranty that in effect excluded an implied warranty.

*S. Holderness,* for plaintiff in error, cited: Civil Code (1910), § 4135; *Pidcock* v. *Crouch,* 7 *Ga. App.* 299 (2).

*Buford Boykin,* contra, cited: Civil Code, § 4483; *Sappington* v. *Rimes,* 21 *Ga. App.* 810; *Muse* v. *Wright,* 103 *Ga.* 783; *Williams Mfg. Co.* v. *Schofield's Sons Co.,* 21 *Ga. App.* 23; *Bullard* v. *Brewer,* 118 *Ga.* 918; *Fay & Eagan Co.* v. *Dudley,* 129 *Ga.* 314; *Pidcock* v. *Crouch,* supra; *National Computing Scale Co.* v. *Eaves,* 116 *Ga.* 511 (2); *Means* v. *Subers,* 115 *Ga.* 371, and cases cited in the following decision.

BLOODWORTH, J. The American Slicing Machine Company sold to Y. L. Carter a slicing machine and retained title thereto. The terms of the sale were $10 cash, 12 monthly payments of $10 each, and a final payment of $5 within 13 months. After making three payments of $10 each Carter refused to pay more, claiming that the machine was "not any good to me at all." The vendor brought an action of bail-trover. Carter filed pleas, and, among other things, alleged failure of consideration. On the trial, after all the evidence, including the contract, was in, the trial judge directed a verdict for $105, being the amount of the purchase-price, less the payments of $30. The defendant excepted.

1. "In an action of trover by a vendor against a vendee, in which the former claims title based upon a note reserving to himself title to the property sold until the purchase-money is paid, no demand is necessary where it appears that the defendant was in possession of the property, claiming title thereto, at the time of the action, his defense being that, owing to a partial failure of consideration, he was not due the balance of the purchase-money to the plaintiff." *Muse* v. *Wright,* 103 *Ga.* 783 (30 S. E. 662). While the facts in the case under consideration differ somewhat from those in the case of *Muse* v. *Wright,* supra, the principle involved

is the same in both cases. See Civil Code (1910), § 4483; *Grant v. Miller,* 107 *Ga.* 804 (2) (33 S. E. 671) ; *Scarboro* v. *Goethe,* 118 *Ga.* 543 (45 S. E. 413) ; *Moore* v. *Ramsey,* 144 *Ga.* 118 (86 S. E. 219) ; *Young* v. *Durham,* 15 *Ga. App.* 679 (5) (84 S. E. 165) ; *Pearson* v. *Jones,* 18 *Ga. App.* 448 (4 a) (89 S. E. 536).

2. "It has been held a number of times by this court, that, as between the original seller and the original purchaser, the agreed price as stated in the contract of sale is prima facie but not conclusive evidence of the actual value of the property, and that upon proof of the contract, in the absence of rebutting testimony as to value, the plaintiff was entitled to recover the balance due thereon." *Lott* v. *Banks,* 21 *Ga. App.* 249 (94 S. E. 324). See also *Elder* v. *Woodruff Hardware Co.,* 9 *Ga. App.* 484 (71 S. E. 806) ; s. c., 16 *Ga. App.* 255 (82 S. E. 268) ; *Jordan* v. *Jenkins,* 17 *Ga. App.* 58 (86 S. E. 278) ; *Moore* v. *Furstenwerth-Uhl Jewelry Co.,* 17 *Ga. App.* 669 (87 S. E. 1097) ; *Young* v. *Durham,* supra. The written contract of sale showed an agreed purchase-price of $135 for the machine. There was no other testimony as to value. It was admitted that $30 of the purchase-price had been paid. Under the pleadings and the evidence, the court properly directed a verdict for $105, the amount of the purchase-price, less the admitted payments.

*Judgment affirmed. Broyles, P. J., concurs. Stephens, J., concurs dubitante.*