13656.  FARM PRODUCTS COMPANY *v.* EUBANKS.

The verdict in favor of the plaintiff — a seller suing the purchaser for damages for an alleged breach of a contract in refusing to accept and pay for a part of the goods sold — was supported by evidence, and the court did not err in overruling the motion for a new trial, which contained only the general grounds.

DECIDED FEBRUARY 15, 1923.  REHEARING DENIED MARCH 1, 1923.

Action on contract; from city court of Dawson — Judge Edwards.  April 12, 1922.

. *R. R. Jones,* for plaintiff in error.

*A. L. Miller, Yeomans & Wilkinson,* contra.

BELL, J.  R. T. Eubanks sued Farm Products Company, a firm composed of R. E. McDowell and J. E. Morris, as for a breach of a contract, alleging that on or about October 1, 1920, he entered into an oral contract with the defendants to sell and deliver to them at Dawson, Georgia, 25 tons of peanuts at the price of $100 per ton, the same to be delivered " after date of the contract and within the year 1920 as they were threshed;" that between the date of the contract and the 15th day of October, 1920, he delivered and the defendants accepted and paid for 14,625 pounds, but that they thereafter failed and refused to accept the remainder.  The suit is for the difference between the alleged contract price, which was at the rate of 5 cents per pound, and an alleged market price of 3 cents per pound, " on the time and date that said peanuts were to be delivered. . . and on said date when said contract was breached."  The statute of frauds is not involved.  The defendants' answer contained only general denials, including a denial of the contract.  The jury returned a verdict in favor of the plaintiff. The defendants' motion for a new trial containing only the general grounds was overruled, and this judgment is assigned as error. It is contended by the plaintiff in error that the evidence does not authorize the verdict for the reasons, that the evidence fails to show any breach by the defendants until after the suit was filed, and that there is no sufficient evidence of market value at the time and place for delivery.  It is unnecessary to point out any evidence relating to other points.

It appears that the plaintiff delivered peanuts to the defendants on two occasions, including four loads on October 14, 1920. The exact quantity of four loads was not delivered on any other

date, so that any evidence relating to the time of delivering "four loads" can refer only to October 14. The plaintiff testified: "When I delivered to Mr. Morris those four loads of peanuts on that contract, he said to me, 'I haven't got any more room to put peanuts now,' and he said, 'Peanuts have dropped down so, I don't see how I can stand to take any more, and I just haven't got the room now to put any more peanuts, and you just hold the peanuts for a few days,' and I said, 'Mr. Morris, I am unable to hold the peanuts. I will just keep them down there until you can have room to put them;' and he said, 'You just hold up a few days, and maybe I will have a place to put them;' and we then walked out to the front of the building, and at a place near his office I saw a place that only had a few peanuts in it; and I said, 'Mr. Morris, here is a place you could put the peanuts, all that you have contracted with me for,' and he said he did not want to put the peanuts in with them; that they were some damaged peanuts and he did not want to mix them with those, and he said, 'You just keep the peanuts a few days.'" He further testified: "In a few days after that [referring to the occasion of delivery of the four loads], the next day, I think, the next evening, the third day after that, I come to Dawson and went to Mr. Morris's office, and he was unloading peanuts and putting them in on the damaged peanuts he told me were damaged, and I asked him about putting peanuts there where he told me he did not want to put the peanuts in there because those peanuts were damaged, and he said he did not want to mix the good peanuts with them, and he said, 'Well, I have shipped out about 80 or 85 tons,' and I said, 'How about my hauling you the other peanuts now?' that he had room to put them in there, and he said, 'Roy, I cannot take those peanuts;' that that concern in Albany had just laid down on him and would not take the peanuts he had sold them, and that he had the peanuts on hand,— I think he said 800 tons or more,— and that he could not take those peanuts; that I could stand the loss as well as he could; that he could not carry the loss and that he could not take it. And I said, 'If you don't take them it will be because twelve men don't decide that you won't have to take them;' and I come on out, and after that I sued him for the loss."

J. E. Morris, one of the defendants, testified: "Mr. Sauls

brought in two loads which amounted to 5100 pounds, and he brought in four loads amounting to 9620 pounds, and in each instance I gave him a weight ticket for each wagon-load and a check for each transaction, and when he got the checks I considered the transaction closed, and he said to me, ' What are you going to do about the rest of the peanuts?' In the meantime I had made up my mind not to take any more of the peanuts, and I didn't care to argue about it, for the simple reason that I had found out about his sending peanuts to Leary. Well,- there is no use of going into that. And I told him that I was not going to take any more of the peanuts at that price; and he said, ' I will show you,' and he then came back later and said, ' Are you going to take any more of those peanuts,' and I said, ' No;' and. he then said, ' Well, I am going to sue you,' and I said, ' All right,' that we would just have to be sued. So we were notified of the suit."

The testimony above quoted from the plaintiff would authorize the inference that the contract was breached on " the next day " thereafter, or on " the next evening of the third day " thereafter, if not on October 14th. The testimony of Mr. Morris was more definite, and would support the finding of a breach on the 14th. The jury were not confined to the evidence of the plaintiff. A breach of the contract prior to the filing of the suit, October 28th, was established sufficiently by the evidence of either side. The fact that there was other evidence from which a different finding could have been made does not affect the validity of the verdict, if from any view of the evidence it was authorized.

Several loads of the peanuts were delivered, accepted and paid for at Dawson, Georgia, without any question as to the place for delivery, authorizing the conclusion that Dawson was the place of delivery, under the contract. It was inferable that delivery or tender of delivery was within the time provided by the contract, whether the refusal to accept occurred either on October 14th or on " the next day " or " the evening of the third day " thereafter.

Was there any evidence showing the market value at that time? Mr. Eubanks, the plaintiff, also gave testimony as follows: " I brought him four loads up here after that, and he paid me $100 a ton, when he said they were not worth but $80 a ton that same day,

and he asked me not to bring any more until he could make room, and I insured the peanuts." As already indicated, this referred to the date of October 14th. It included an admission on the part of the defendant as to the market value on that date. Connecting this with the evidence of Mr. Morris, which was sufficient to show a breach on the same day, there is evidence of the market value of the peanuts at the time of the breach. But this is not all. Mr. Morris testified further: "They went down to $90 a ton on the 8th [referring to October 8th]. They went down to $85 per ton the following week." The court takes judicial cognizance that October 8, 1920, was on Friday. *Dorough* v. *Equitable Mortgage Co.,* 118 *Ga.* 178 (45 S. E. 22); *Williams* v. *Allison,* 10 *Ga. App.* 840 (74 S. E. 442). The following business week would therefore have included October 14, which was Thursday. The market value of one date would be some circumstantial evidence of the market value on a very near later date. In spite of the fluctuating character of market value, it is presumed in the absence of evidence to the contrary to remain constant for at least brief periods. 9 *Enc. Evid.* 911.

While, it is true, it was the burden of the plaintiff to prove the market value at the time and place of delivery (*Bloom* v. *Americus Grocery Co.,* 116 *Ga.* 784 (2), 43 S. E. 54; *Brandt* v. *Buckley,* 27 *Ga. App.* 515 (1), 519, 109 S. E. 692), he was not confined in this to the evidence of himself, but could resort to evidence adduced by the opposite party. Furthermore, market value, just as any other fact, may be established either by direct or circumstantial evidence. *Atlantic Coast Line R. Co.* v. *Harris,* 1 *Ga. App.* 667 (57 S. E. 1030); *Landrum* v. *Swann,* 8 *Ga. App.* 209 (2) (68 S. E. 862); *Frost* v. *Powell,* 10 *Ga. App.* 95 (5) (72 S. E. 719). Testimony is plentiful that all fluctuations were downward from October 8; that in no great while it dropped as low as $60 or $65 per ton. It will therefore be seen that the jury could have found from the evidence of Eubanks that on October 14 the price was $80 per ton, or from that of Morris that it was $85, and from the evidence as a whole that it was not higher than either figure at the time of the breach, whether as fixed by Eubanks or Morris. It would be immaterial if the price went lower, for that would merely have increased the damages recoverable. With the market value at $85 per ton, the verdict was less than it might

have been. The defendant could not complain that the verdict was for a less sum than was authorized by the evidence. *Roberts* v. *Rigden,* 81 *Ga.* 440 (2), 443 (7 S. E. 742). It is quite evident that the witnesses in speaking of market prices were referring to the prices in Dawson, the place of delivery. It results that the plaintiff did not fail to carry the burden of proving the market value at the time and place of delivery.

The jury allowed interest from November 3, 1920. In actions for the breach of a contract like the present, the jury are not obliged to allow any interest at all. Civil Code of 1910, § 4396; *Snowden* v. *Waterman,* 110 *Ga.* 99 (35 S. E. 309). That they allowed more interest than they were obliged to allow or less than they could have allowed, does not demand the conclusion that they found that the breach did not occur until after the filing of the suit, when there was evidence sufficient to show that it occurred prior thereto.

Upon the points which are contested no error appears. The verdict was supported by the evidence, and the court did not err in overruling the motion of the defendants for a new trial.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*