38662. CHILDS *et al.* v. LOGAN MOTOR COMPANY.

DECIDED APRIL 21, 1961—REHEARING DENIED MAY 9, 1961.

*McClure, Ramsay & Struble*, for plaintiffs in error.
*Ellard & Frankum, Stephen D. Frankum*, contra.

BELL, Judge. ■ The first special ground contends that a certain document was erroneously admitted in evidence over the timely objection of the defendants. The document objected to is captioned, "Manufacturer's Statement of Origin to a Motor Vehicle." This document was a certification that the new car described therein was transferred on February 6, 1958, from the Ford Motor Co. to the plaintiff. The document goes on to describe the car as a 1958 Ford Fairlane 500 Tudor, 8-cylinder, with a shipping weight and horse power designated, and gives

the manufacturer's motor vehicle number, which is the same number assigned to the car as charged in the plaintiff's petition. The trial court overruled the objection of the defendants to this evidence, and allowed it to be introduced. It is contended that this erroneously admitted document was harmful to the defendants in that it proved the title as being in the plaintiff. *Code Ann.* § 38-711, known as the "Uniform Business Records as Evidence Act," provides in substance that any writing or record, whether in the form of an entry in a book or otherwise made as a memorandum or record in any act, transaction, occurrence, or event shall be admissible in evidence in proof of such act, transaction, occurrence, or event, if the trial judge shall find that it was made in the regular course of any business and that it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event, or within a reasonable time thereafter. The Code section goes on to state that "All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but they shall not affect its admissibility. . . . This section shall be liberally interpreted and applied." The defendant urges that this document is a business record of the Ford Motor Co. but not of the plaintiff, a Ford dealer or distributor. With this contention we cannot agree. A document of this type, sent in the ordinary course of business from the seller to the buyer, serving as a memorandum of the transfer of title to personal property, is most assuredly a business record of the recipient and obviously was intended to be kept by him as at least one proof of purchase.

The witness for the plaintiff testified that he had been employed by the plaintiff corporation for eight years, during the past five of which he had been sales manager; that he was familiar with the automobile described in the petition; and, further, that the document was received by the Logan Motor Co. from the Ford Motor Co. in the normal course of its business. This evidence was uncontradicted. This identification renders the document admissible in evidence under *Code Ann.* § 38-711. It is particularly to be noted that the statute itself provides

for a liberal interpretation and application. See the resolution expressing the legislative intent in Ga. L. 1958, pp. 542-3. The weight and credit to be given business records, including the circumstances of making and lack of personal knowledge on the part of the persons responsible therefor, are matters for the consideration of the jury. *Allstate Ins. Co. v. Buck,* 96 Ga. App. 376 (100 S. E. 2d 142). The trial court properly admitted this document into evidence. In any event, there is ample other uncontradicted evidence in the record from which the jury could find, as it did find, that the plaintiff owned the car allegedly converted by the defendant.

■ The second special ground of error assigned in the motion for a new trial takes exception to the following charge to the jury on the measure of damages: "I charge you, gentlemen of the jury, that the plaintiff would be entitled to recover the highest market value of the property in question between the date the plaintiff filed its petition and this date. The burden is on the plaintiff to establish the market value of the property in question by a preponderance of the evidence." It is contended that this charge is erroneous and not sound as an abstract principle of law, and that the charge was misleading to the jury in that the testimony of two of the defendants as to the market value of the automobile related to its market value twelve days prior to the date the plaintiff filed the petition but after the defendants had come into the possession of the automobile, and that this charge misled the jury into disregarding their opinion on market value which was proper and should have been considered by the jury. The record reveals that the two defendants testified that they purchased the automobile on September 3, 1958, from the person who was identified elsewhere in the evidence as having stolen it from the plaintiff. One defendant, Loyd Childs, testified that he gave this person a check for a thousand dollars and an older car which had a market value of three or four hundred dollars. This testimony obviously relates to the value of the car on September 3, 1958. He further testified that he expected to make a profit above the price he paid for the car. Mr. Ty Childs, another defendant, testified that he saw the vehicle about fifteen minutes after it was traded

in. He said he did not remember the date, but that he believed it was in June. He testified to the poor condition of the car. Six photographs of the car were introduced in evidence. His opinion of the market value of the car was around $700 "at that time." This witness further testified that he was present when another witness, Mr. Shirley, came to the defendant's lot on September 15, 1958, and he was present when Mr. Shirley examined the car, and that it was in the same condition as when he (Ty Childs) first saw it. Reasonably interpreted, the testimony of these two witnesses related to the value of the car on September 3, some twelve days before the plaintiff brought this action against the defendant, but, as noted in the emphasis above, the testimony of Ty Childs also points out that the car was in the same condition on September 15, the day the petition was filed. Code § 107-103 provides, "In estimating the value of personalty unlawfully detained, the plaintiff may recover the highest amount which he shall prove between the time of the conversion and the trial." Under this statute the instruction of the trial judge that the plaintiff would be entitled to recover the highest market value of the property in question between the date the plaintiff filed the petition and "this date" was clearly erroneous. The testimony of the several witnesses in this case fixed the value of the car at variously from $300 to $2,700. One of the defendants testified that it was worth $300; another defendant, Ty Childs, fixed the value at $700 in June, 1958, but later changed the time to September, 1958. However, Ty Childs testified that the car was in the same condition when three other witnesses, who testified as to its value, saw it on the day the suit was filed, September 15, 1958. The sheriff testified the value of the car on September 15, 1958, was $750 or $800. Other witnesses fixed the value at from seven to eight hundred dollars, while the plaintiff's witness testified the fair market value was $2,700. The plaintiff's witness testified this was the fair market value of the automobile on the date he saw the automobile in the possession of the Childs Motor Co. He fixed this date as approximately April 16, 1958. He gave detailed testimony as to the condition of the car, which was used as a demonstrator and had two to three hundred miles on it.

Upon cross-examination, the witness testified that he was establishing the value of the car in Washington, D. C., and that he would not give an opinion as to the value it had in Stephens County, Georgia.

Considering the instruction to the jury, it is obvious that it more narrowly than is proper restricted the time within which the plaintiff could fix the measure of damages, and, further, it postponed the period for fixing damages to a later date than the law of conversion generally allows. Thus, it erroneously confined the plaintiff to a shorter span and a later period in time from which to choose a value of the property converted. It is apparent that the charge was both erroneous and harmful to the plaintiff. This being so, can it be said that it was also injurious to the defendant, who is complaining of the error? "There was no error *against the defendant* in the charge of the court which instructed the jury that if the conversion was wilful, the plaintiff's measure of damages would be the market value of the property at the time of the conversion, although it is provided in the Code that in such a case the measure would be the full value of the property at the time and place of demand or suit brought. Proof of a demand and a refusal in a trover suit is only necessary in order to furnish evidence of the conversion, and is not essential to a recovery if a conversion is otherwise shown. . . The defendant was not harmed by an instruction which limited the measure of the recovery to the value of the property at the time of its conversion." *Shealey v. Wilder*, 33 Ga. App. 745 (127 S. E. 805). Here the instruction on the measure of damages was harmful to the plaintiff but not to the defendant, who cannot complain.

■ We turn now to the general grounds. The car was described in the evidence and by the witnesses as being a 1958 model Ford Tudor Fairlane 500, converted in 1958, a few months after the manufacturer had shipped it to the plaintiff. The "expert" witnesses varied in their valuation of the car from $300 to $2,700 (in Washington, D. C.), and the petition prayed for damages in the amount of $3,200. The defendants admitted paying $1,000 cash plus a motor vehicle worth $300 to $400 and expected to make a profit on the transaction. Six pictures of the

car were admitted into evidence. "While competent expert testimony is entitled to great weight, it is not so authoritative that either court, jury, or commission is bound to be governed by it, since it is advisory merely and intended to assist them in coming to a correct conclusion. Consequently courts, juries, and commissions, in determining the issues they are called upon to settle, may and should take into consideration all the surrounding facts and circumstances attending the subject-matter of the inquiry." *Blanchard v. Savannah River Lumber Co.*, 40 Ga. App. 416 (1), 424 (149 S. E. 793). The jury is not bound by an expert opinion and can disregard it. *Manley v. State*, 166 Ga. 563, 566 (19) (144 S. E. 170). Juries are not absolutely bound by testimony as to market value, and may reach an independent conclusion as to value from data and evidence before them. While opinion evidence may be given as to value, market value is a question peculiarly for the jury, and a jury is not required to accept even uncontradicted opinions as to market value. *Hay v. Carter*, 91 Ga. App. 540 (86 S. E. 2d 532). Thus, in a trover action to recover an automobile and hire, the jury is not bound by witnesses' opinions as to value of rent or hire, but may form its own opinion from data furnished by the evidence submitted. *Youngblood v. Ruis*, 96 Ga. App. 290, 298 (99 S. E. 2d 714). As revealed by the record, a jury verdict in the sum of $1,600 is not without evidence to support it, nor is the verdict strongly against the weight of the evidence. The motion for a new trial on the general grounds was properly overruled.

*Judgment affirmed. All the Judges concur, except Felton, C. J., who dissents, and Frankum, J., not participating.*

FELTON, Chief Judge, dissenting. In my opinion, there is no evidence in this case which would authorize a verdict of $1,600. An examination of the evidence will show that Mr. Bargano did not testify as to the value of the automobile involved in this action. His testimony as a whole can not be construed in any other way except that he only testified as to the value of a car similar in model to the one involved in this case in Washington, D. C., assuming it was in good condition. The testimony as to the fact that the defendants bought the automobile

involved for a $1,000 check, plus an old car worth from $300 to $400, has no probative value on the question of the value of the automobile for the reason that one of the defendants testified that the motor and transmission of the automobile had been "doped up", and in effect that the defendants were defrauded in the sale and purchase of the automobile, and they stopped payment on the check for $1,000. The evidence showed that the automobile in the condition in which it was found to be by the defendants was not worth more than $300 to $700. Other witnesses testified that the value of the automobile at the time of its conversion by the defendants, which was at the time they bought it in September, 1958, was from $300 to $850. Mr. Bargano testified in one place that he saw the automobile in question in April, 1958, but later in his testimony he said he saw it after the purchase by the defendants on April 16, 1959. The jury found the value of $1,600. While a jury is not bound to accept the exact opinion evidence as to value, I know of no rule of law or decison which will authorize a jury to approximately double the value estimated by the opinions of the witnesses. It is true that pictures of the automobile were in evidence. They are not in the record. It would be a very unusual set of photographs if they gave the jury information about the transmission and motor. I can think of nothing else in the case which could have led the jury to a $1,600 value unless it was Mr. Bargano's testimony, which is completely without probative value, and the fact that the defendants attempted to buy the vehicle for $1,400 before they found out it had been "doctored" to mislead them.

The verdict in this case is as unsupported as a verdict for $25 would have been. See *Sammons v. Copeland,* 85 Ga. App. 318 (69 S. E. 2d 617) ; *Elder v. Woodruff Hardware &c. Co.,* 16 Ga. App. 255 (85 S. E. 268).