## 50738. ALDON INDUSTRIES, INC. et al. v. GORDON COUNTY BOARD OF TAX ASSESSORS.

DEEN, Presiding Judge.

The twenty-eight appellants involved here, whose cases were by consent consolidated for trial in the superior court, appeal from the judgment on a jury verdict finding against their contentions that the tax assessors of Gordon County, who admittedly based assessments for personal property taxes on 40% of the 100% market value at which such personal property was returned, based assessments on real property situate in the county at figures considerably under this amount, thereby creating two unequal and impermissible subclassifications of tangible property for tax purposes. The assessments were appealed to the county board of tax equalization set up under the provisions of Code § 92-6912, and from there to the Superior Court of Gordon County. *Held:*

1. The motion to dismiss the appeal is denied. *J. D. Jewell, Inc. v. Hancock,* 226 Ga. 480 (1) (175 SE2d 847); *Young v. State,* 123 Ga. App. 791 (182 SE2d 676).

2. It is stipulated that personal property was returned at 100% of its fair market value, and that it was assessed at 40% of this figure as required by Code § 92-5703 ("All tangible property subject to taxation by the State, any county, or any other taxing jurisdiction shall be returned by the taxpayers as provided by law at its fair market value, and shall be assessed at 40 per cent of said fair market value and taxed according to said 40 per cent of its fair market value on a levy made by each respective taxing jurisdiction. . . It is the intent and purpose of the General Assembly of this State that the value of tangible property as referred to in the tax laws of this State shall be 40 per cent of the fair market value of such property.")

It was further uncontested that real estate and tangible personal property (except for a few exceptions such as motor vehicles) constitute a single class of property for tax purposes and must be valued in the same manner. "All taxation shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." Constitution of Georgia, Art. VII, Sec. I, Par. III (Code § 2-5403.) The taxing authority

may not subdivide a single class of tangible property into subcategories. *Griggs v. Green,* 230 Ga. 257 (197 SE2d 116); *Herring v. Ferrell,* 130 Ga. App. 431 (203 SE2d 617) (this ruling being affirmed in the modifying opinion, *Herring v. Ferrell,* 233 Ga. 1 (4) (209 SE2d 599)).

At issue is whether the evidence demands a finding that real property was appraised at a substantially lower figure than fair market value in the county as a whole with the result that assessments represented something like 30% instead of 40% of fair market value and thus threw an unjustifiable tax burden on an impermissible subclassification of tangible personal property. This is an important matter for both large and small business concerns whose taxes are in large part levied on inventory and fixtures, and on apartment dwellers who own personal property but little or no real estate.

The appellants introduced records of twenty-one pieces of real estate which had been sold during the year in question and the previous year with sales prices ranging from $4,000 to $222,000, along with evidence that the sales were uncoerced and most of them were substantially cash sales. Sales prices uniformly ran ahead of appraised values to the extent that (assuming the sales prices in fact represented fair market value) the appraised values ran between 28% (on a $160,000 sale) and 77% (on a $48,000 sale) of market values. The county contended that the sales were not all cash sales, that the cross section was too small to allow any definitive reflection of appraised versus market values, and that in some cases sales were speculative or subject to special considerations and should not be taken at face value, it being the duty of the board of tax assessors "to see that all taxable property within the county is assessed and returned at its just and fair valuation *and* that valuations as between the individual taxpayers are fairly and justly *equalized* so that each taxpayer shall pay as near as may be only his proportionate share of taxes" as required by Code § 92-6911 (a). Also, under Code § 92-6912 (4) (B): "If the board [of equalization] determines that uniformity is not present, the board shall have the power to order the county board of tax assessors to take such action as is necessary to obtain uniformity." See *Moseley v. Fargason,*

215 Ga. 207 (109 SE2d 591). Sales prices, under this view, are heuristic but not conclusive. For example, if a subdivision with 20 identical houses shows three cash sales within a year, and these sales vary appreciably in price, a true index of fair market value would be an average of the sales. On the other hand, although the county had some general testimony by a real estate man and by a member of the board of tax assessors to the effect that assessed values were in fact based on fair market value, no examples at all were forthcoming of particular instances bearing this out. However, the board had in the previous two years examined some 4,000 pieces of property, and had in fact changed assessed values upward in some circumstances, although where and to what extent the record fails to indicate. From the evidence of the tax assessor, taken as a whole, his conclusion that property in the county was appraised at fair market value is not supported by evidence. The variations shown by the plaintiffs' analysis of sales to appraised value showed large blocks of land valued at less than half their sale value, with little attempt to explain the discrepancies and no attempt to indicate proper appraisals on other lands. Further, the thrust of the testimony showed an effort to "equalize" taxes on real estate, but little or no effort to keep this equalization up to its fair market value as required by the statute. "Realty and tangible personal property are of the same class, and the constitutional rule of uniformity in taxation requires that both be taxed alike." *Hutchins v. Howard,* 211 Ga. 830 (1) (89 SE2d 183), and see *Colvard v. Ridley,* 218 Ga. 490 (128 SE2d 732). While questions of value are peculiarly for the jury "where there is any data in the evidence upon which the jury may legitimately exercise their 'own knowledge and ideas' " (*Dixon v. Cassels Co.,* 34 Ga. App. 478 (130 SE 75)), and while the members of this jury may have had a general idea from their own experience as property owners that property in the county was properly appraised, there is no evidence in the record of any *data* from which this conclusion could be drawn.

3. The trial court was correct as to the contention that certain "official records of the Department of Audits" were improperly excluded, for lack of proper

authentication. The law provides as to how an official document must be documented. See Code § 38-601. There was no proper authentication here, nor was there anything whatever to show that these communications or letters were from the Department of Audits except at the bottom of 53 pages of data sheets is found the following: "Georgia Department of Audits. E. B. Davis, State Auditor." Four other pages refer to "Information supplied by the Revenue Department." An equalized adjusted school property tax digest is required by Code Ann. § 92-7008, the same to be prepared by the auditor. These two documents did not state that this was the "equalized adjusted school property tax digest prepared by the Department of Audits," and it was not properly authenticated.

4. Error is enumerated on the reading of Code §§ 92-6202.1, 92-6206, 92-6207, 92-6208 relating to methods of returning property. Although some of the information in these statutes was irrelevant to the case as not applying to categories in which the various plaintiffs were situated so far as might have been shown by the evidence, nevertheless, the duty to return property for taxation and its valuation at full market value was relevant and we find nothing in the instructions given, which simply outlined the manner of making returns under various circumstances, which would have been harmful to the appellants. These enumerations are without merit.

*Judgment reversed. Bell, C. J., Quillian, Clark and Webb, JJ., concur. Pannell, P. J., Evans, Stolz and Marshall, JJ., dissent.*

ARGUED MAY 21, 1975 — DECIDED OCTOBER 21, 1975 — REHEARING DENIED NOVEMBER 18, 1975 — 

*Langford, Pope & Bailey, R. Thomas Pope,* for appellants.

*Chance, Maddox & Jones, Ronald F. Chance, Sr., Howard Jones,* for appellee.

EVANS, Judge, dissenting.

Twenty-eight taxpayers in Gordon County appealed

their assessments made by the board of tax assessors to the board of equalization, where the assessments were sustained. The taxpayers then appealed to the Superior Court of Gordon County, where their cases were tried before a jury, and the jury returned a verdict sustaining the assessments. Motions for new trial were filed and overruled, thus showing the trial judge approved the verdicts of the jury.

According to the United States census of 1970, Gordon County was composed of 23,570 residents, and it is fair to assume that among the twenty-eight taxpayers, many of them had friends on the jury, who yet were unwilling to construe the evidence in such fashion that a verdict could be rendered for the twenty-eight taxpayers.

Perhaps it is proper here to set forth several well-recognized principles of law, to wit: (a) When a verdict is approved by the trial judge, the evidence must be construed most favorably towards sustaining that verdict. See *Boatright v. Rich's,* 121 Ga. App. 121 (173 SE2d 232), and citations therein. (b) When a verdict is approved by the trial judge, if there is "any" evidence to support that verdict, it should be sustained; in other words, the preponderance of the evidence is completely immaterial, although it is not conceded here that the taxpayers had a preponderance on their side of the case. See *Davis v. State,* 68 Ga. App. 296 (2) (22 SE2d 762); *McBowman v. Merry,* 104 Ga. App. 454, 455 (1) (122 SE2d 136).

The system of assessments used in Gordon County, as in many other counties, is to ascertain 100% of the true market value of the property, and then place same on the tax books for taxation at 40% thereof.

It was stipulated that evidence would be offered by only two of the twenty-eight taxpayers, and that this evidence would be applied to the cases of all of the twenty-eight taxpayers.

The taxpayers have not appealed as to the assessments made upon *real estate,* but appeal only as to *personalty.* They contend the assessors allowed the realty to be placed on the books at only 30% of its true value, which had the effect of shifting too great a tax burden on the personalty.

The thrust of the majority opinion, as we construe it, is as follows: (1) The evidence *demanded* a finding that the real property was appraised at less than fair market value in the county as a whole, amounting to about 30%, which imposed an unjustifiable burden on personal property valuations. (2) There was no evidence or data that the property was properly appraised.

The twenty-eight taxpayers are in a somewhat strained and awkward position. They assert that the realty was assessed at too low a figure (around 30% of its value), which resulted in a higher figure (around 40%) as to personalty. Not one of them alleges that he owns no real estate, and each is therefore in the position of asserting that he has been *helped* on the one hand and *hurt* on the other. Each says he is appealing only as to personalty, but not one of them alleges how he came out over-all. In other words, did the assessment, if made as they contend (which is not admitted) affect their over-all position for better or worse in the long run? Usually realty owned by an individual is more valuable than his personalty, and as they do not say one way or the other here, we may assume that this is the case with these twenty-eight taxpayers. There is a well known rule of law that the burden is on one who appeals to show affirmatively not only error, *but also that the error has injured him. Campbell v. Powell,* 206 Ga. 768, 770 (3) (58 SE2d 829); *Childers v. Ackerman Const. Co.,* 211 Ga. 350, 356 (86 SE2d 227); *Midland Properties v. Kennedy,* 100 Ga. App. 37, 38 (110 SE2d 120); *Harwell v. People's Loan &c. Co.,* 101 Ga. App. 100 (112 SE2d 800).

Actually we may assume that these twenty-eight taxpayers benefited in the over-all plan of taxation, because they do not contend to the contrary.

Under these circumstances, with a jury trial in their home county among their friends, and with the verdict approved by the trial judge, unless a very flagrant error was committed, a new trial should not be granted, and no such error appears in this case.

1. The majority opinion places the taxpayers in a rather difficult position asserting that the evidence *demanded* a finding that the real property was appraised at less than fair market value in the county as a whole. In

other words, it is implied that a directed verdict *on this issue* was authorized.

*Market value* has always been proven by opinion evidence. Code § 38-1709. Hearsay evidence is sufficient to fix market value. *Gulf Refining Co. v. Smith,* 164 Ga. 811 (4) (139 SE 716); *Landrum v. Swann,* 8 Ga. App. 209 (1) (68 SE 862). A jury is not bound by opinion of experts as to market value. *Atlantic & B. R. Co. v. Howard Supply Co.,* 125 Ga. 478 (2) (54 SE 530); *Wilson v. Lattimore & White,* 135 Ga. 469 (2) (69 SE 740).

There was no admission on the part of the taxing authorities that they taxed real property at less than 40% of the fair market value. They offered expert witnesses in the real estate field to prove that the property was valued at fair market value and that the assessment thereon was 40% thereof, even though other experts gave it as their opinion that the fair market value of property was different than as testified by the assessors' expert witnesses.

Besides, there was ample evidence in the case to show the jury had evidence before it as to the valuation of the realty, and they fixed its valuation correctly. The taxpayers' use of 21 land sales out of some 4,000 land transactions during the period involved in the deeds 1972 and 1973 (T. p. 171), is wholly inadequate to prove that approximately 15,000 taxable parcels of property on the 1973 Tax Digest are under-valued (T. p. 31). The assessment valuations were not imagined figures as that shown in *Register v. Langsdale,* 226 Ga. 82, 86 (4) (172 SE2d 620). Thus, the jury could have considered and compared the data offered by the taxpayers with that of the taxing authority experts. Further, the transactions offered by the taxpayers were not "absolutely straight cash transactions." (T. p. 56). In analyzing some of the taxpayers' sales, they simply were not cash transactions whereby Code Ann. § 92-5702 would control. (T. pp. 281, 309, 152, 58, 304, 172-174, 316).

2. As to the contention by the majority that there was no evidence or data that the property was properly appraised, we differ violently. In some instances, the taxing authorities testified that they refused to accept the deed records showing sales of property as being the fair

market value of said property due to the speculation of land values in this county in the last few years. One of the expert witnesses testified that he was a real estate broker with five years experience; that there had been considerable speculation as to land; that it increased in value each year including 1968, 1969, through 1973, but was somewhat down in 1974. (T. pp. 142, 143, 145). One of the tax assessors testified that he used the combination of income, cost and sales study in determining fair market value (T. p. 165); that the land was increasing in value due to speculation, but that he tried to keep assessments equal. (T. p. 175). "Market value may be established by either direct or circumstantial evidence. *Atlantic C. L. R. Co. v. Harris,* 1 Ga. App. 667, 669 (57 SE 1030); *Landrum v. Swann,* 8 Ga. App. 209 (2) (68 SE 862); *Farm Products Co. v. Eubanks,* 29 Ga. App. 604, 607 (116 SE 327). On this issue, the jury 'are not absolutely bound even by the uncontradicted testimony of experts, but may consider the nature of the property involved and any other facts or circumstances within their knowledge in arriving at a verdict, provided there are in evidence sufficient facts from which they may draw a legitimate conclusion.' *Grant v. Dannals,* 87 Ga. App. 389, 391 (74 SE2d 119). 'Questions of value are peculiarly for the determination of the jury, where there is any data in the evidence upon which the jury may legitimately exercise their "own knowledge and ideas." ' *Dixon v. Cassels Co.,* 34 Ga. App. 478 (3) (130 SE 75). See also, *Atlantic C. L. R. Co. v. Clements,* 92 Ga. App. 451, 455 (88 SE2d 809); *Childs v. Logan Motor Co.,* 103 Ga. App. 633, 639 (120 SE2d 138)." *Sun Ins. Co. of New York v. League,* 112 Ga. App. 625, 626 (145 SE2d 768); also *Georgia Power Co. v. Harwell,* 113 Ga. App. 653, 654 (149 SE2d 376).

3. I concur fully in Division 3 of the majority opinion, but I dissent strongly from the judgment of reversal.

These twenty-eight taxpayers have had an assessment in their own county and then they have had two hearings or trials in their own county, and the last one was before a jury of their friends and neighbors. I feel the case has been fairly tried and would affirm the trial court.

I am authorized to state that Presiding Judge

Pannell and Judge Stolz and Judge Marshall join in this dissent.