## 59435. MOORE v. THE STATE.

BIRDSONG, Judge.

Thelma Moore was convicted of "food stamp fraud." She appeals, and we reverse.

The evidence shows that beginning in July, 1977, Mrs. Moore, in the name of her husband, applied for and received food stamps until the Chattooga County Department of Family & Children Services' officials made the determination that her husband, Gordon Moore, had been receiving Veterans Administration benefits since July, 1977. At trial, Mrs. Moore denied the receipt of any V. A. benefits before May, 1978. It was alleged in the indictment against her that she committed food stamp fraud on or about June 30, 1978. The last monthly application for food stamps filed by Mrs. Moore was filed April 20, 1978; in that application she stated that her husband had applied for but had not received any V. A. benefits as of that date. As the result of having made that statement, Mrs. Moore was required to, and did, sign an "authorization for release of information" directed to the Veterans Administration. The conviction of Mrs. Moore for fraud arises from her alleged failure to disclose the benefits received on behalf of her husband from the V. A., and for her having made applications for food stamps which contained statements that the household income did not include any benefits paid by the V. A. The only showing at the trial evidencing any fraud on behalf of Mrs. Moore in obtaining $689 in food stamps from July, 1977 to May, 1978 came from two letters sent by V. A. officials to the Department of Family & Children Services which were admitted in evidence over hearsay objections. These two letters were offered by the Department of Family & Children Services as records kept in the regular course of business; they advised that "Records of the V. A. disclose that" Gordon Moore had been receiving V. A. benefits since July, 1977.

We reject the state's argument that the letters were properly admitted because they were shown by proper foundation testimony to be business records of the Department of Family & Children Services, pursuant to Code § 38-711. Assuming that the letters were proper business records of the Department of Family & Children Services, the authenticity of the contents of the letters was in no way established. It is irrelevant in this case that based on the information in the letters the Department of Family & Children Services recomputed the appellant's eligibility for food stamps, and determined that she had committed fraud. The object of investigation in the case is whether, in fact, she did commit fraud,

and not what action the Department of Family & Children Services took as the result of receiving the letters. The letters might have been admissible to explain the conduct of the Department of Family & Children Services in investigating the case further or in determining her ineligibility for food stamps, *if* such action by the Department of Family & Children Services had produced any original, direct evidence of the fraud with which Mrs. Moore is accused (see Code § 38-302; and see *Cawthon Motor Co. v. Scheufler,* 153 Ga. App. 282 (265 SE2d 96) (1980)). The letters were not admissible to prove the payment of V. A. benefits to Gordon Moore (see Code § 38-711), because they were hearsay, deriving their value solely from the veracity and competency of persons and investigatory results which were no part of this trial (Code § 38-301). In a parallel situation, the Supreme Court in *Martin v. Baldwin,* 215 Ga. 293 (2) (d) (110 SE2d 344), held that photostatic copies of an Army discharge and Army clinical records, although produced from a V. A. file, were not admissible under Code § 38-711, as records made in the regular course of V. A. business, even though they were obviously records of the War Department or the Defense Department *"but [were] not offered as such with the necessary proof that they [were] records of that department made in the regular course of its business."* Unless the necessary proof is given that the letter, transcript, or memorandum was made in the regular course of business at the time of the act or occurrence sought to be proved (in this case, that Mrs. Moore's husband was issued V. A. benefits), it is not admissible under Code § 38-711 (*Martin,* supra, p. 294 (4), 302).

Excluding the hearsay information contained in the admitted letters, there is no competent evidence that Mrs. Moore's household received V. A. benefits at the time she made application for food stamps, so as to sustain a criminal case against her for fraud in obtaining public assistance by denying the receipt of V. A. income. She was entitled to a directed verdict of acquittal, and the trial court erred in refusing to grant it.

*Judgment reversed. Deen, C. J., and Sognier, J., concur.*

ARGUED FEBRUARY 6, 1980 — DECIDED
APRIL 8, 1980 —
REHEARING DENIED MAY 7, 1980.

*Bobby Lee Cook, Jr.,* for appellant.

*William M. Campbell, District Attorney, James A. Meaney, III, Assistant District Attorney,* for appellee.

ON MOTION FOR REHEARING.

### I.

On motion for rehearing, the state for the first time argues that even without the evidence which we have ruled inadmissible in this case, the conviction of Mrs. Moore is supported by the evidence. It is argued that Mrs. Moore admitted under cross examination that during the period in question the household income included $38.05 in V. A. benefits which she failed to report, and that she admitted she had wilfully and falsely understated the household income in several applications for food stamps. However, the fact is that on direct examination Mrs. Moore testified that her husband had received $38.05 a month from the V. A. from July, 1977 until April, 1978, but that she had made no untrue statements to the Department of Family & Children Services. The food stamp application filed by Mrs. Moore, which presumably represents that no V. A. benefits were received, was not entered in evidence and in fact Mrs. Moore denied that she herself made that representation. There appeared to be some distinction or confusion in Mrs. Moore's mind between V. A. benefits and the sum received by her husband, inasmuch as she insisted that that sum was not the full benefit her husband had applied for. In fact, the testimony as to the receipt of $38.05 per month is in conflict with the position of the appellee, which is that according to the letters from V. A. officials, Mr. Moore was issued in V. A. benefits $199 per month in July, 1977, and $354 per month thereafter until January, 1978, when the award became $305.95 per month. Mrs. Moore consistently denied having made any untrue statements with regard to any V. A. benefits received by her household. The evidence is certainly confused and equivocal; and there is no reconciliation of it in the record or in argument before this court. In the absence of the V. A. letters (which it was error to admit in the case to prove fraud by Mrs. Moore to obtain food stamps), the other evidence does not support, much less demand, a verdict of guilty beyond a reasonable doubt. *Hamilton v. State,* 239 Ga. 72, 77 (235 SE2d 515); *Johnson v. State,* 238 Ga. 59, 61 (230 SE2d 869); *Cauley v. State,* 130 Ga. App. 278, 286-288, 290-293 (203 SE2d 239).

### II.

Appellee asserts that the holding in this case is in conflict with the controlling authority in *Childs v. Logan Motor Co.,* 103 Ga. App. 633 (120 SE2d 138), and *Lewis v. United California Bank,* 143 Ga. App. 126 (237 SE2d 645), and that the "failure of this court to address and reconcile the holding of [*Martin v. Baldwin,* cited in main opinion] and *Lewis,* supra, the failure to apply the rationale of *Lewis* to the instant fact situation and the failure to distinguish the

instant facts from those in *Martin,* leave a substantial 'hole' in the application for the Business Records Act, Code Ann. § 38-711." We respond to this objection because it evinces a misunderstanding of certain fundamental evidentiary principles that seems to be appearing with some frequency. See, e.g., *Cawthon Motor Co. v. Scheufler,* 153 Ga. App. 282 (265 SE2d 96) (1980). This is, the fact that evidence may in some circumstances qualify as admissible on some ground for some purpose does not mean the evidence is admissible or relevant for the purpose offered.

The problem in this case is that letters or documents received by the Department of Family & Children Services from the Veterans' Administration were, in the classic statement on hearsay, offered as evidence "to prove the truth of the matter stated." 11 EGL 395, Evidence, § 88 (1979 Rev.) That is, the V. A. letters were offered by the Department of Family & Children Services to prove the fact that Mrs. Moore's household had been issued certain V. A. benefits and that, consequently, she had committed fraud in misrepresenting that fact.

Hearsay evidence is not admissible to prove the truth of the fact asserted, unless the evidence constitutes a recognized exception to the general rule excluding hearsay. 11 EGL 398, Evidence, § 89 (1979 Rev.). The Business Records Act (Code § 38-711) is an exception to the hearsay rule, and if a business record is qualified according to the standard in Code § 38-711 it may be admissible to prove the truth of the fact stated therein. But that does not mean that every document or record of one business, which might become in one sense a business record of the witness because it is received by the witness' business, is admissible to prove the truth of the fact stated in the record or document. Code § 38-711 is clear in providing that "*any writing or record . . . made as a memorandum or record of any act,* transaction, occurrence, or event *shall be admissible* in evidence *in proof of said act,* transaction, occurrence, or event, *if the trial judge shall find that it was made in the regular course of any business and that it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.*" (Emphasis supplied.)

As we said in the opinion of this case, if the Department of Family & Children Services intended to prove it *received* the letters in the regular course of business (and that, as a result, it went out and performed some other conduct relevant to proof of Mrs. Moore's alleged fraud (see Code § 38-302)), that it can do (see *Cawthon Motor Co.,* supra; *Glosson v. State,* 77 Ga. App. 705, 706 (3) (49 SE2d 691); but it cannot use them to prove the fact asserted in them (that Mr.

Moore was issued the V. A. benefits) because the Department of Family & Children Services cannot show that the letters or memoranda were made "at the time of [the act or occurrence; i. e., the issuance of benefits to Mr. Moore]." (Code § 38-711). The letters were not routine factual documents made in the regular course of business but were composed for informational purposes in connection with a criminal prosecution.

The Supreme Court recognized these principles in *Martin*, supra; and again, in Justice Bowles' concurrence in *Lewis v. United California Bank*, 240 Ga. 823, 824 (242 SE2d 581), affg. *Lewis*, 143 Ga. App. 126, supra. In *Lewis*, 240 Ga. 823, 824-825, supra, Justice Bowles points out that "[w]here *routine, factual documents are made by one business, transmitted or delivered to a second business, and there entered or kept by the second business in the regular course of the business of the receiving business*, they *can* become business records of the receiving business." (Emphasis supplied.) The thread that runs through the *Lewis* and *Childs* cases, supra, which makes the particular records admissible in those cases, is that the records were sent by one business routinely and at the time they were made (at the time of the transaction or occurrence) to the second business as a part of a related transaction. In other words, in each case the business of the second receiving firm *relied* upon the transmission of "routine factual documents" (*Lewis*, 240 Ga. 823, 824-825, supra) at the time or near the time of the occurrence recorded. In each case, the second firm was the proper repository for those records, sent by the first firm as the transaction occurred, and the records became business records of the second firm, "made in the regular course of [that] business, and ... *it was in the regular course of such business to make such memorandum ... at the time of such act ... or within a reasonable time thereafter.*" The bank in *Lewis*, supra, was the factoring agent for the manufacturers in California who sold goods to Lewis and regularly shipped records of such sales to the bank. The entire business function of the bank, in that context, depended upon the receipt and recording of those documents in the regular course of its business. In *Childs*, supra, the automobile dealer would presumably not sell a car unless it had received the title ("Statement of Origin") from the manufacturer; its business depended upon the receipt and recording of that document. In each instance, the first and second businesses operated, with regards to the business records at issue, in one business context. In *Lewis*, 143 Ga. App. 126, 127, supra, it was said that "the records of the various [California] firms were kept by the bank as its own and were relied upon by the bank as it would its own records." In *Childs*, supra, p. 635, it was said, "a [manufacturer's statement of origin to a motor

vehicle], sent in the ordinary course of business from the seller to the buyer, serving as a memorandum of the transfer of title to personal property, is most assuredly a business record of the recipient and obviously was intended to be kept by him as at least one proof of purchase." In both cases, these records become business records of the second businesses *not because they were received by the second business and put or kept in its files* (such will always be "in the course of business"); but *because they are routine factual documents made by the first business and transmitted to the second business as part of a related or symbiotic business relationship—almost as if the two firms were headquarters and branch in the same large corporation—in which the business of the receiving firm relies upon these records.*

We emphasize that under the required liberal interpretation and application of Code § 38-711 (see *Lewis v. United California Bank,* 143 Ga. App. 126, 127, supra), that where a record such as we have just discussed is a "routine factual document" (*Lewis,* 240 Ga. 823, 824, concurrence, supra) received by the second business and "kept . . . as its own and . . . relied upon by [that business] as it would its own records," (*Lewis,* 143 Ga. App. 126, 127, supra), it becomes such record as is "made" by that second business, Code § 38-711. It must be so or else (as Justice Bowles said), "day to day routine factual documents when made by another could never be admitted in evidence as business records of the receiving, custodial party" (*Lewis,* 240 Ga. 823, concurrence, 825, supra). Such records are admissible to prove "any act, transaction, occurrence or event" only if they are "*made at the time of such act, transaction, occurrence or event or within reasonable time thereafter.*" Code § 38-711. This statutory language confirms what we have just said—that the records must be such as are "routine factual documents" regularly transmitted in the mutually operative course of the two businesses. They are a current recordation of an event as it happens, or soon thereafter, in the first business and upon which the second business must rely in its regular course of business.

Any other record will still be hearsay, which the language of Code § 38-711 clearly does not permit. Extracts, summaries, transcripts provided by one business purely as information to the second business clearly do not fall within Code § 38-711. Such were the letters sent by the V. A. to the Department of Family & Children Services in this case; they were not admissible to prove that Mr. Moore was issued the certain V. A. benefits. The weakness in them is obvious: they seek to prove one of the ultimate facts under investigation, but there is no evidence from the V. A. that they are records of the V. A. made at the time of the act in question, nor are

they "routine factual documents" received by the Department of Family & Children Services in the regular course of its business at or reasonably near the time of the act under investigation, and relied upon by the Department of Family & Children Services as it would its own records.

*Motion for rehearing denied.*